## LOUISA HANNA *v.* D. M. PRITCHARD, Sheriff, et al.

Property purchased in the name of the wife during the marriage, belongs to the community, and is subject to the payment of the community debts, unless the wife shows that it was purchased with funds belonging to her, of which she had the administration at the time, or that she was separated in property from her husband.

Where property purchased in the name of the wife, has been seized on execution as community property, and the wife, in support of her claim to it, sets up a judgment of separation of property between herself and husband, the seizing creditor may show the nullity of the judgment by all kinds of legal evidence.

A judgment of separation of property between husband and wife is null and void, where there was no basis for the action, the husband not having been indebted to the wife.

Where an act of donation from a third person to the wife, was a real contract, and intended by the parties to be binding, it cannot be disregarded by the creditors of the husband, and the property donated seized on execution against him. They must resort to a direct action to annul such an act.

APPEAL from the District Court of Catahoula. *Barry*, J.

James G. *Taliaferro*, for plaintiff, contended: 1st. That the plaintiff having introduced her judgment in evidence, solely to sustain her allegation that she is separate in property from her husband, and not to show her right to any property that ever belonged to her husband, or which was acquired through or by an execution issued on her judgment, and not even naming the word judgment in her petition, as incorrectly stated in defendant's answer, the defendant had no right, under such circumstances, to set up against her judgment the allegation that it was fictitious and fraudulent. I endeavor to sustain this position by the following argument: By reference to all the cases reported, touching controversies between married women and the creditors of the husband, it is found, with only one exception, the case of *Bertie* v. *Walker*, 1 R. R. 431, that in every case where the creditor was allowed to set up, incidentally and collaterally against the wife's judgment, the allegation of fraud and collusion, the circumstances under which such allegation has been allowed, fall distinctly under one or more of the following heads, which were set forth in a motion to strike out, and which, for convenience, I beg leave to repeat here: Where the wife is endeavoring to enforce her judgment against the property of her husband to the detriment or injury of the creditors of her husband; or, where she alleges title to the property seized by the creditor, under and by virtue of her judgment and proceedings under it against her husband; or, where the wife is seeking to enforce her judgment against property in the hands of third persons, by virtue of a tacit lien, or otherwise, arising from her judgment. None of these conditions occur in the present suit. The following lists comprise all the cases that I have been able to find in our reports, and I believe they embrace all: 1st. *Turnbull* v. *Davis*, 1 N. S. 568; 2d. *Buisson* v. *Thompson*, 7 N. S. 460; 3d. *Beard* v. *Pejeau*, 8 N. S. 459; 4th. *Serapum* v. *Lacroix*, 1 L. R. 373; 5th. *Deblanc* v. *Deblanc*, 4 L.R. 419; 6th. *Eastin* v. *Eastin*, 10 L. R. 197 and 198; 7th. *Fennessee* v. *Gonselm*, 11 L. R. 419, Revocatory suit; 8th. *Muse, Syndic* v. *Yarborough*, 11 L. R. 521; 9th. *Bostwick* v. *Gasquet et al.* 11 L. R. 534; 10th. *Dimitry* v. *Pollock*, 12 L. R. 296; 11th. *Adams* v. *His Creditors*, 14 L. R. 415; 12th. *Brassac* v. *Ducros*, 4 R. R. 335; 13th. *Dugas* v. *Her Husband*, 6 R. R. 527; 14th. *Oliver* v. *Oliver*, 6 R. R. 36; 15th. *Fulton* v. *Fulton*, 7 R. R. 73; 16th. *Gates et als.* v. *Legendre*, 10 R. R. 74.

In all the above cases, the facts and circumstances fall under one or more of the above heads.

The circumstances of the case at bar, are entirely different from all the foregoing. The following list includes all the cases that bear any analogy to the one before the court, viz, 1st. *Hickey* v. *Duplantier*, 4 L. R. 315; 2d. *Bertie* v. *Walker*, 1 R. R. 431; 3d. *Darock* v. *Darcy*, 6 R. R. 342.

The first of these cases fully sustains the ground I take in the present case, that the creditor can only attack the wife's titles by a revocatory suit. That case, *Hickey* v. *Duplantier*, seems to have settled the doctrine, that where the wife holds property under deeds made to her after a separation of property, such deeds can only be set aside, if they be simulated and fraudulent, by a suit for that purpose.

The second case, *Bertie* v. *Walker*, seems to sanction the opposite opinion. But the doctrine in that case is, clearly, not sustained by the opinion of the court, in the third case, (*Darock* v. *Darcy*) decided about two years afterwards, where the court says, "admitting that the appellant can, in this way, (by direct seizure,) attack the validity of a judgment rendered by a competent court, which may well be questioned, &c." The principles laid down in this case, seem to accord with, and confirm those announced in *Hickey* and *Duplantier*. It is contended, on the part of the plaintiff, that under the circumstances in this case, she cannot be required to sustain, contradictorily with the creditors of her husband, the validity of her judgment of separation; and that the present case is not one in which the creditors can set up, incidentally, against that judgment, fraud and collusion.

2d. That the defendant, by admitting that *Tidwell* sold the three slaves, and contending that he conveyed them to *Robert H. Hanna*, thereby asserts that deed to be a real, but fraudulent conveyance. If a real, but fraudulent act, it can be set aside only by a suit to annul. The same remarks apply to the donation under which the plaintiff holds the slave *Venus*.

3d. That, under the circumstances of this case, the rule strictly applies, that the nullity of a judgment cannot be set up by persons not parties to it. The

plaintiff's motion to strike out, was overruled by the lower court, and a bill of exceptions taken.

I shall now briefly notice the objections urged against the validity of the wife's judgment of separation of property, to the defence of which, the plaintiff was forced by the ruling of the court below. That no judgment by default was taken against the defendant, *Robert H. Hanna.* It is admitted that the minutes of the court do not show that a judgment by default was taken. But it is shown, both by the judge's and clerk's docket, for the June term, 1848, (the term at which the plaintiff obtained her judgment,) that a judgment by default was taken at the proper time. The omission of the clerk to enter the default on the min-- utes, cannot prejudice the party taking it. Further, the judgment finally recites, that "the judgment by default not having been set aside, &c." This corrobo-- rates the entry on the judge's and clerk's dockets, and makes it clear, that a judgment by default was taken. These dockets were introduced to show, that the non-appearance on the minutes of the taking a default, was not the fault of the plaintiff, and were not intended to contradict the minutes. It was admissi- blo surely, to make this showing, that the wife had no just rights or claims against her husband. The evidence shows that she had. That the judgment became null through delay in executing it. Our laws do not prescribe any speci- fic time within which the wife shall proceed to execute her judgment. See *Fulton* v. *Fulton,* 7 R. R. 73. In that case, sufficient diligence, the court said, had been used, where the execution issued about four months after the rendition of the judgment. In the present case, execution issued within less than four months from the date of the judgment. That the plaintiff's judgment was not advertised according as required by law. The evidence shows that it was. By agreement of counsel, the clerk, in making up the transcript, was allowed to omit copying two of the advertisements and to certify the filing of the gazettes in evidence on trial. That the sheriff's return upon the execution does not show that a demand was made of the defendant to show property, and of the plaintiff to point out property, &c. The articles 726 and 727 of the Code of Practice, being introduced under the head of *capias ad satisfaciendum,* their provisions seem intended more particularly as preliminary steps to the issuing of the *capias,* in order that it might clearly appear that the debtor, before his incarceration, had no property, out of which the judgment could be satisfied. But, giving those arti- cles the most general application that they are susceptible of, they can properly be only applied to cases where parties directly interested might be injured by the non-fulfillment of their provisions, as in the case of sureties on bonds, &c.; or in the case of the judgment creditor, at whose instance the execution issued, and who might have pointed out property of his debtor, if he had been called upon. The plaintiff, as the judgment creditor in the present case, is the only one to complain, and she could not complain, unless through the omission of the sheriff, to call upon her to point out property, she had been injured. The defendant himself, distinctly avers, that *Robert H. Hanna* "has no property or means. His own judgment remained dormant from June, 1848, to July or August, 1850, because *"Robert H. Hanna,* had no property or means" out of which his judgment could be satisfied; and he seeks now to make his debt out of the property of the plaintiff, because his debtor has nothing. But suppose the plaintiff's execution had been returned by the sheriff, strictly in conformity with those articles; in what better condition would it have placed her husband's cred- itors. Such a return would not have precluded the plaintiff from afterwards issuing another execution and seizing her husband's property, if *any could be found.* Such a return would not have satisfied her judgment, or left a cent the more for her husband's creditors. By the return that was made upon the exe- cution, it is seen, there was no property of *Hanna* out of which judgments could have been satisfied; a fact well known to the defendant, and by a know- ledge of which, it is difficult to see how he could be benefitted, come in what way soever it might. Then where is the necessity of the sheriff's return, show- ing that he called first upon the defendant, and then upon the plaintiff, to show property? *"Lex neminem cogit ad vana."*

But it is respectfully urged, that the issuing of the execution, within a reason- able time, is a showing of sufficient diligence on the part of the wife, and that the manner of the sheriff's return upon that execution, is wholly indifferent, and does not create *laches* on her part. And lastly: That the Code of Practice does not require sheriff's returns upon executions, in all cases, to pursue strictly the provisions of articles 726 and 727, is clear, from the general tenor of those parts

of the code which treat of the execution of judgments, adjudication, &c., and especially from articles 711 and 712, where we meet with those expressions: "return of execution, no property found," and "return of the execution, no property found belonging to the debtor." I contend, that according to these articles, 711 and 712, returns, such as those just quoted, would amply fulfill the law in all cases, except where, by special laws founded upon particular reasons, greater formality is required; and I respectfully submit, that no special provision of law requires, in cases like the one under consideration, a more formal return, than the one that is made on the execution issued by the plaintiff, on her judgment.

*T. Phelps*, on the same side.

*O. Mayo*, for defendants, contended: This suit originated in the seizure of a number of slaves, as the property of *R. H. Hanna*, to satisfy a writ of *fieri facias* issued in a judgment rendered in the suit of *Jacobs*, use of *Coply*, against said *Hanna*.

The plaintiff, wife of defendant in execution, enjoined the sale of this property, and sets up, in her petition for injunction, that she is legally separated in property from her husband, and that the slaves seized, are her own separate property; to establish which, on trial, she introduced a title, derived from *Tidwell*, to three of the slaves, and an act of donation, executed by *Robert D. Percy*, for the other.

The defendant sets up in his answer, that the pretended judgment of separation between plaintiff and her husband, was, and is, an absolute nullity, even between the parties thereto, and is wholly without legal force or effect as to third persons; for the reasons, that the wife had, in fact, no rights against her husband. The judgment in separation suit, was rendered on illegal evidence, (that of her father taken *ex parte*,) that the pretended judgment was never executed or enforced in a legal manner; and further answering, defendant sets forth and alleges, that the transfers to *Mrs. Hanna*, were disguised and simulated transactions; that *Mrs. Hanna* had no money or means with which she could have paid the price; that the price was, in fact, paid by the husband; that the apparent donation from *Percy*, was not, in truth, a donation, but a disguised sale, *Percy* having long since been paid the price by *Hanna*, and that the whole scheme, commencing with the suit for separation, was an artifice resorted to, to disguise the real title, and place the property out of the reach of *Hanna's* creditors.

The first inquiry then is, upon what evidence was the judgment of separation based. That on page 22, consists in what purports to be a receipt, signed by the husband, *R. H. Hanna*, by which he acknowledges to have received $600 of his wife's money, from *R. W. Thompson*, her father. That on page 30, purports to be an *ex parte* affidavit of said *Thompson*, wherein he states, that he gave to his daughter, at the time of her marriage, in money and furniture, eight hundred dollars; five hundred dollars being in money, and three hundred dollars in articles of furniture; and that the money was appropriated to her use.

On trial of this suit, the receipt above referred to, was offered and received by the court, and a bill of exception retained. *James Thompson*, plaintiff's brother, was introduced to sustain the judgment of separation. He states that *Hanna* went to St. Louis in 1848, in February; while there had a settlement with *Mrs. Hanna's* father; was in the room with them at the time, their backs were towards him; saw no money; "both had their pocket-books out as though they had money." The court will notice that this occurred at the time the receipt is dated, 15th February, 1848. The suit for separation was filed the 9th March, 1848. But twenty-three days, therefore, intervened between this parade of pocket-books and the filing her suit for separation. This fact, connected with the other evidence, raises the presumption, at least, that the scheme was devised with the express view of procuring evidence to sustain the suit for separation.

The plaintiffs have totally failed to show any conversion of the wife's property to the husband's use, except the surgical instruments, and that was done in Mississippi, where the common law prevails, and the personal property of the wife becomes the husband's the moment he reduces it to possession. There is no evidence that the amount paid by *Thompson* for hire of the slaves, or rent of office, or the price of the tombstone, were ever charged to *Mrs. Hanna*; or that her money, to the amount of one cent, was ever, during their residence in this State, converted to the husband's use. There was, therefore, no basis for the judgment of separation. The judgment was never legally enforced by such

HANNA
v.
PRITCHARD.

*bonâ fide* non-interrupted suit to obtain payment, as the law requires. No attempt was made by the sheriff to find property. No application was made by him to the plaintiff or defendant to point out the property. The law is not complied with by the mere formality of issuing and returning the writ; there must be a real attempt to execute it.

On the merits, it is shown by the testimony of *Williams*, that the money paid for the slaves purchased from *Tidwell*, came out of *Dr. Hanna's* pocket. *Mrs. Hanna* was directly called upon by the pleadings, to show from what source she derived her means. She has totally failed to show that she had any. On the contrary, her own allegations in the separation suit, show, that if she had any, they were used by her husband; and the evidence shows, that what she had, was reduced to the husband's possession before they removed to this State. The return on her execution shows she made no part of the judgment.

*Percy*, in answer to interrogatories, states that he made the donation of the slave, *Venus*, to *Mrs. Hanna*, to prevent her from ever being seized again for *Hanna's* debts; that he was paid her value by *Dr. Hanna* and *Bradstreet*; and it was shown that *Bradstreet* was the partner of *Dr. Hanna* in the practice of medicine.

The facts in this case are very similar to the case of *Dopon* v. *Ward*, sheriff, decided at Monroe, October term, 1848, (not reported.)

The judgment of the court was pronounced by

ROST, J. In the suit of *Jacobs*, for the use of *George W. Copley*, v. *Robert H. Hanna*, the sheriff seized four slaves, as the property of the defendant. His wife enjoined the seizure, on the ground that she was the owner of those slaves, having purchased three of them from *D. F. Tidwell*, after her separation of property from her husband, and holding the other, under a donation, from *R. D. Percy*, to her.

The seizing creditor, among other grounds of defence, alleges, that the judgment of separation of property, on which the plaintiff relies, was null on two grounds. 1st. That the plaintiff had no claim against her husband, which could be the basis of an action of separation of property. 2d. That if she had, the decree of separation had lapsed, for want of execution within the time required by law.

The decree and proceedings had in the suit for separation of property, were adduced on the trial, and the plaintiff further offered as evidence, to substantiate the claims upon which the judgment had been rendered. The defendant introduced rebutting evidence, and the court, after hearing, dissolved the injunction with damages, allowing the sheriff to proceed under the execution. The plaintiff has appealed.

The three slaves purchased from *Tidwell*, were acquired by the plaintiff during marriage; they, therefore, belong to the community, and are subject to the payment of the community debts, unless the plaintiff has shown either that the slaves were purchased with funds belonging to her, and of which she had the administration at the time, or that she was separated in property from her husband. She has adduced, as the foundation of her title, the proceedings and decree in the suit for a separation of property. The defendant has, therefore, the right to show the nullity of the judgment in that suit, by all kinds of legal evidence. *Collins* v. *Batterson*, 3 L. R. 245.

We are not prepared to admit, that the first ground of nullity is tenable. Execution issued upon the judgment of separation within a reasonable time, and was returned by the sheriff, "no property found." It not appearing that the husband was possessed, at the time, of property subject to seizure, this return would probably be sufficient to prevent the lapsing of the judgment; but we are of opinion that the second ground is well taken. The claim for a separation of property is based exclusively upon the allegation, that the husband had

HANNA
*v.*
PRITCHARD.

received, during marriage, and converted to his use, large sums of money belonging to the petitioner, and that the disorder of his affairs induced her to believe that her rights were in danger. We are compelled to say, that she has failed to prove that allegation by legal evidence. The testimony of her father must be entirely disregarded; that of her brother is too vague and uncertain to be relied on, and the receipt given by her husband does not, by itself, make proof. There having been no indebtedness from her husband to her, the action of separation had nothing to rest upon, and the judgment rendered therein is null and void. The slaves sold by *Tidwell* are, therefore, community property, and subject, as such, to the defendant's execution. It is otherwise with the slave given to the plaintiff by *Percy.* Although not separated in property, she was capable of receiving by donation, and the act under which she holds, is a real contract, intended by the parties, and by *Hanna,* to be binding. Whether the true consideration of that contract was such a fraud upon the creditors of *Hanna* as entitles them to avoid it, is a question which could only have been inquired into in a direct action.

It is therefore ordered, that the judgment, so far as it dissolves the injunction arresting the sale of the slave, *Venus,* be reversed, and that the injunction to sell that slave be reinstated and made perpetual. It is further ordered, that the judgment be otherwise affirmed, the plaintiff paying the costs of the district court; and those of this appeal, to be paid by *George W. Copley.*